628 P.2d 696

STATE of New Mexico, Plaintiff-Appellee,

v.

Richard E. LUCERO, Defendant-Appellant.

No. 4848.

Court of Appeals of New Mexico.

May 7, 1981.

John B. Bigelow, Chief Public Defender, Andrea L. Smith, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

ANDREWS, Judge.

Richard Lucero appeals from his conviction on two counts of commercial burglary. The following events gave rise to Lucero's appeal.

Lucero, two other men and a woman were arrested by Officer Heshley on suspicion of commercial burglary. The three men were handcuffed, given their *Miranda*[1] warnings, and placed in the officer's patrol car. Officer Heshley secretly turned on a tape recorder on the front seat of the patrol car, and then left the three men alone while he inventoried their car.

When Officer Heshley returned to the patrol car he told the three men, "[y]ou might want to listen to this tape," and played back part of the tape for them. According to Officer Heshley, the tape contained inculpatory statements.

On the way to the detention center and after they had heard their recorded conversation, the three suspects initiated a conversation with the officer in which they made several incriminating statements.[2] Lucero was given his *Miranda* rights again after he arrived at the detention center. He signed a written waiver of his rights and gave a statement admitting his participation in the burglaries. Officer Heshley subsequently destroyed the taped conversation.

At a motion hearing to suppress the statements Lucero made after hearing the tape, Officer Heshley stated that he made the secret recording "to see what they were

---

[1]. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2]. Defendants were given their *Miranda* rights a second time while in the patrol car; however, it is not clear whether this occurred before or after the tape was played for the defendants.

saying." At trial, the officer testified that he recorded the conversation "as a safety precaution for myself and also to hear what's going on in my police car when I'm not in it."

Two issues are raised on appeal: (1) whether the trial court erred in denying Lucero's motion to suppress his oral and written statements because they were involuntary; and, (2) whether Lucero was denied his right to due process and to confront witnesses against him because of the destruction of the tape recording.

■ Initially, Lucero contends that recording of his communication with his confederates constitutes an unlawful incursion into his Fourth Amendment rights. We disagree.

It appears to be the general rule that a prisoner in jail has no reasonable expectation of privacy and that the custodians of such a detention center have the right to exercise constant surveillance of inmates, including eavesdropping on their conversations. This rule has been held to include electronic surveillance while a person is under detention in a police building and not yet formally imprisoned.

The question at hand is whether the rule applies to arrested persons confined in a police vehicle; we think it does. Once a person is taken into custody by law enforcement authorities, his right to privacy has been effectively diminished, and he has no reasonable expectation that his conversation will be private.

*Brown v. State*, 349 So.2d 1196 (Fla.App. 1977); *see also, People v. Chandler*, 262 Cal.App.2d 350, 68 Cal.Rptr. 645 (1968). When they sat in Officer Heshley's patrol car, these suspects had no reasonable expectation of privacy. Thus, Lucero's oral statement was not the "fruit" of an unlawful seizure of evidence.

■ The question then, is whether the officer exerted "an improper influence" when he played the recorded conversation back to Lucero.

To be admissible, a confession must be free and voluntary; that is, it must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In reviewing the trial court's ruling to admit defendant's statements, this Court must view the facts in a light most favorable to the trial court's decision. *State v. Bloom*, 90 N.M. 192, 561 P.2d 465 (1977). Admission or exclusion of evidence resides within the sound discretion of the trial court, and absent an abuse of discretion, the trial court will be affirmed. *State v. Greene*, 92 N.M. 347, 588 P.2d 548 (1978). Although the trial court stated that what occurred in the police car was an "interrogation in the sense of *Brewer*,[3] his conclusion that Officer Heshley's purpose in playing the tape to defendant was to elicit additional inculpatory statements, does not require a holding that defendant's second statement was involuntary as a matter of law.

■ In *State v. Gallegos*, 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978), this Court stated two prerequisites for the admission of incriminating statements made by a defendant in the presence of the police; that the defendant was advised of his *Miranda* rights, and that the statements were voluntary. In this case, *Miranda* warnings were given to Lucero. The remaining question is whether the statements made by Lucero in the patrol car and shortly after reaching the detention center were voluntary.

In *State v. Aguirre*, 91 N.M. 672, 579 P.2d 798 (Ct.App.1978), this Court adopted the test for "voluntariness" established in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973):

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation.

**3.** *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

The only evidence offered at the suppression hearing was the testimony of Officer Heshley. Defendant never, in any way, contradicted the officer's testimony, which was: (1) the officer played a part of the tape but asked no questions; (2) he did not threaten to use the tape against defendant; (3) the conversation en route to the police station was initiated by defendant and his confederates; and, (4) the only content of the tape would be conversation among the co-defendants. Under these uncontroverted facts, we cannot reach the conclusion that defendant's will was overborne. *State v. Aguirre, supra.* While the playing of the tape can be likened either to an "adjuration to tell the truth" or "deception", as discussed in *Aguirre*, these two "items" were not, in themselves, a basis for suppression; they were simply an aspect of the totality of the circumstances. Under the above circumstances we cannot hold that Lucero's will was overborne and cannot say that the trial court erred in holding, in the totality of the circumstances, that defendant's statements were voluntary.

Lucero next contends that he was denied due process of law and his right to confrontation because material evidence was destroyed.

■■ Where evidence is destroyed, defendant must show: (1) that the state either breached some duty or intentionally deprived the defendant of evidence; (2) that the improperly "suppressed" evidence was material to the guilt or innocence of the accused; and, (3) that the suppression of the evidence prejudiced him. *State v. Lovato*, 94 N.M. 780, 617 P.2d 169 (Ct.App. 1980); *Chacon v. State*, 88 N.M. 198, 539 P.2d 218 (Ct.App.1975). We need not decide whether or not the first two prongs of this test are met because it is clear that the last element is not present. Lucero can show no prejudice from the destruction of the tape.

The evidence before the trial court was that Officer Heshley recorded over defendant's first statement. The prosecutor never had access to the statement, and the officer did not testify as to the statements made on the tape. The matter was only raised during cross-examination. On appeal, defendant argues that:

> The tape may have indicated that Lucero only committed one of the burglaries and that his co-defendants had committed the other one. Lucero may have owed his friends a favor and they may all have figured that it was better for only one of them to go to jail than all three.

Defendant's assertion that he was prejudiced by the destruction of this evidence consists of mere speculation, and flies in the face of his and his co-defendant's signed statements. It was never suggested to the trial court that any such hypothesized evidence would be found on the destroyed tape.

The trial court did not err in refusing to grant Lucero's motion for a dismissal on the basis of the unavailability of the tape recording. Defendant Richard Lucero's conviction is affirmed.

IT IS SO ORDERED.

HERNANDEZ, C. J., and WOOD, J., concur.